## A93A1776. IN RE FARMER et al.

(442 SE2d 251)

BEASLEY, Presiding Judge.

During the course of Millard Farmer's representation of Emmitt Stephens in a civil rights action brought by Stephens against Harold Ivey and Bonny Associates, alleging racial discrimination in an attempt by Stephens to lease certain commercial space from Ivey (hereafter "the civil litigation"), both Farmer and his client Stephens were held in contempt of court by Judge William B. Hill. This appeal followed.

Stephens' suit against Ivey was tried to a jury and resulted in a verdict in defendants' favor. That case is *Stephens v. Ivey*, 212 Ga. App. 407 (442 SE2d 248) (1994).

As background, Farmer contends that there exists animosity between him and Judge Hill stemming from their roles as opposing counsel in capital cases prior to Judge Hill taking the bench. Farmer sought on three occasions to disqualify Judge Hill from participating in the civil litigation based on these allegations; his motions were denied. See opinion in *Stephens v. Ivey*, supra at 407 (2).

A series of attorneys represented defendants in the underlying litigation. During the 15 months prior to trial, defendants were being represented by William Major. Farmer contends that on the eve of trial, he was served with Major's proposed pre-trial order in which William Campbell was listed along with Major as co-counsel for defendants. Farmer asserts that "Campbell was brought into the case to delay the trial and to obtain influential witnesses for Ivey." Farmer responded by filing a "Motion to Disqualify William 'Bill' 'Judas' Campbell as Attorney for [defendants]. . . ." Every reference to Campbell in this lengthy document was by the same designation.

The motion to disqualify was heard by Judge Hill on June 1, 1992, and denied from the bench.

In addition, the court observed: "The subject motion specifically contends of the existence of Hobbs Act violations and the illegal influence of the potential testimony from alleged intended witnesses from the defendant . . . as we are all aware that a lawyer's reputation and his expertise is his only stock in trade. These weighty and damaging allegations have been hastily made by counsel for the plaintiff without the benefit of even marginal investigation by plaintiff's counsel prior to reducing the same to writing and cavalierly making the same a matter of record for public consumption. The court finds this conduct to be less than responsible. The court will not tolerate it, and the court invites counsel for the defendant to file in as expeditious a manner as possible a motion for appropriate sanctions to be directed to and against counsel for the plaintiff and plaintiff himself."

Campbell moved for sanctions and expenses of litigation predicated under OCGA § 9-15-14, which was heard on September 8. But see *Hutchison v. Divorce &c. Law Center*, 207 Ga. App. 421 (427 SE2d 784) (1993), for proper procedure. As such a motion was premature, the court refused to entertain the request for sanctions until 45 days after final disposition. It nevertheless ordered: "On its own initiative however, the court, pursuant to the authority of OCGA § 9-11-12 (f) orders stricken from all filed pleadings any and all references to William Bill Judas Campbell. *All references to counsel, the parties and any witnesses shall be by their proper names.* The responsibility and burden is upon counsel for plaintiff to file amended versions of all affected pleadings within thirty days from today's date. This matter is to be placed on the next available trial calendar." (Emphasis supplied.)

Farmer thereupon amended his previously filed motion to disqualify by striking all references to "Judas," he substituted instead, for *each reference to Campbell*, "William C. Campbell, a person who is betraying the cause and constitutional quest of racial equality by jumping into this case just before trial to represent [defendants]."

Campbell responded with a motion to strike and request for oral argument. Farmer countered with a document styled, "The one hundred million net worth of [defendants] has corrupted the professional conduct of William 'Bill' Major and William 'Bill' Campbell." The motion to strike was heard on March 1, 1993. The following transpired at that hearing:

"THE COURT: . . . Is it your contention that by making references to William Campbell, quote, a person who is betraying the cause and constitutional quest of racial equality by jumping in the case just before the trial to represent [defendants], close quote. Is it your contention that is in compliance with this court's order?

"MR. FARMER: I certainly intend in every way to be in compliance with the court's order and what I thought that the court meant. . . .

"THE COURT: Let me tell you why I am asking so that you can gauge your response. The court is and I do, in fact, find and I will rule that you're in contempt of my order, you and your client of September 8, 1992, in that you are in direct violation of that portion of the order that requires all references to counsel, the parties and any witnesses shall be by their proper names. That is a quote from the order. I am going to find you in contempt of that provision of the order unless you can justify your conduct and this is your opportunity to state your justifications.

"MR. FARMER: Your honor, may I have an opportunity to present evidence on this matter before an independent judge?

"THE COURT: No, sir. This is your opportunity to present evidence to me.

. . .

"THE COURT: . . . This is your opportunity to make your showing. We are here on the pleadings, and I am asking for your reasons, your justification as to why this is not in contempt of my order.

"MR. FARMER: . . . It was not intended in any way to be a contempt or a confrontation or anything of that nature. What I thought that the court meant by its order is that you did not want slang names used when referring to counsel and I thought that what had happened in the motion that you perceived Judas and Bill to be slang names that should not be used in a court pleading and so what I did was . . . I removed the slang names of Bill and Judas and inserted a descriptive phrase certainly not a name that I was calling William Campbell."

The court gave Farmer every opportunity to justify his conduct but his responses remained the same.

The court found that the "phrase inserted by attorney Farmer is immaterial, impertinent and scandalous," and granted defendants' motion to strike. It further found: "This court, based upon all the information of record before it, and after having afforded attorney Farmer an opportunity to respond finds that plaintiff and plaintiff's counsel willfully and purposefully chose a course of conduct designed to violate the definite, certain, clear and literal terms of this court's order of September 8, 1992. This court, in clear and simple language, admonished all counsel pursuant to OCGA § 9-11-12, that all references to counsel, the parties and any witnesses be by their proper names. This court finds as a matter of fact that plaintiff and plaintiff's counsel pursuant to their October 1, 1992 filing are in direct and purposeful violation and contradiction of this court's order of September 8, 1992."

1. Appellants contend in enumerations of error 1 and 2 that there was insufficient evidence to find them in contempt of court under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

The court is authorized under OCGA § 15-1-4 (a) (3) to "inflict summary punishment for contempt . . . to cases of: . . . (3) [d]isobedience or resistance by any officer of the courts . . . to any lawful . . . order . . . or command of the courts." The court's directive was clear. The contumacious act was committed in the presence of the court. The evidence was clearly sufficient under the reasonable doubt standard to find appellants in wilful contempt of the court's order. The fact that the order stated in part that there was "clear and convincing evidence" that "all counsel had actual knowledge of the

September 8, 1992, order and there exists no reason to postpone this court's ruling of this issue of contempt," does not indicate that the court applied an erroneous standard of proof as to appellants' guilt. On the evidence before the court, any rational trier of fact could have found appellants guilty under the reasonable doubt standard. See *In re Crane*, 253 Ga. 667, 669 (2) (324 SE2d 443) (1985). The dignity of the judicial process was at stake in the conduct of Farmer and his client, and the authority of the court was at stake by their judge-baiting refusal to obey the court's order.

2. Appellants contend they were denied their due process and equal protection rights under the federal and Georgia constitutions in that they: (1) failed to receive adequate notice of the charges; (2) were denied a constitutional hearing; (3) were denied a hearing before an independent trier of fact; (4) were denied an independent prosecutor; (5) were required to prove their innocence; (6) were convicted on an improper standard of proof; and (7) were punished while Campbell's conduct was condoned.

Appellants were afforded all the due process requirements under the federal and Georgia constitutions as set forth in *Dowdy v. Palmour*, 251 Ga. 135 (2) (304 SE2d 52) (1983), which applied the Supreme Court's mandate in *Taylor v. Hayes*, 418 U. S. 488 (94 SC 2697, 41 LE2d 897) (1974): "A trial judge may find an attorney in contempt of court without trial by jury where the penalty actually imposed does not exceed six months." (Footnote omitted.) *Dowdy*, supra at 141 (2) (a). Punishment herein consisted of a $400 fine. "[A] trial judge has the power . . . to maintain order in the courtroom, to declare conduct committed in his presence and observed by him to be contemptuous, and, after affording the contemnor an opportunity to speak in his or her own behalf, to announce punishment summarily and without further notice or hearing." Id. at 141-142 (2) (b). A hearing by another judge is only authorized when "the announcement of punishment is delayed, and where the contumacious conduct was directed toward the judge or where the judge reacted to the contumacious conduct in such manner as to become involved in the controversy." Id. at 142 (2) (d). Due process did not require a hearing before another judge.

3. Appellants contend they were subjected to vindictive punishment "for the judge's personal gain while venting his anger engendered by a long history of hostilities against Millard Farmer."

Claims concerning the disqualification of Judge Hill were addressed in *Stephens v. Ivey*, supra at 407 (2).

4. Appellants' remaining assertions are unfounded, unsupported and will not be considered.

*Judgment affirmed. Cooper and Smith, JJ., concur.*

DECIDED FEBRUARY 22, 1994 —
RECONSIDERATION DENIED MARCH 11, 1994 — 

*Millard C. Farmer, Jr.*, pro se.
*Michael J. Bowers, Attorney General, Daryl A. Robinson, John C. Jones, Senior Assistant Attorneys General, Heyman & Sizemore, William H. Major, Ellis, Funk, Goldberg, Labovitz & Campbell, William C. Campbell*, for appellee.